# Exhibit 1 – Pegnia Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## KANSAS CITY DIVISION

| | |
|---|---|
| In re: | |
| | Case No. 25-50053 |
| DCA Outdoor, Inc., *et al.*,[1] | Chapter 11 |
| Debtors. | Jointly Administered |

## DECLARATION OF JOSEPH V. PEGNIA
## IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY
## GLASSRATNER ADVISORY & CAPITAL GROUP, LLC AS FINANCIAL ADVISOR

I, Joseph V. Pegnia, declare as follows:

1.      Except as otherwise indicated herein, the matters set forth in this Declaration are within my personal knowledge or are based upon information provided to me by DCA Outdoor, Inc. et al., the Debtors in these Chapter 11 cases (the "Debtor").

2.      I submit this Declaration in support of the Debtors' *Application to Retain and Employ GlassRatner Advisory & Capital Group as Financial Advisor Effective as of September 11, 2025* (the "Application"), filed concurrently with this declaration to comply with 11 U.S.C. §§327, 328 and 329, and Bankruptcy Rules 2014 and 2016. All capitalized but undefined terms in this Declaration shall have the meaning given to them in the Application.

3.      I serve as a Senior Managing Director at GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), and as such, I am authorized to make this Declaration on behalf of

---

[1] The other Debtors in these Chapter 11 cases are as follows, with the last four digits of their respective EINs: Anna Evergreen, LLC (2226); Brehob Nurseries, LLC (3791); Colonial Farms, LLC (3736); Colonial Gardens Developments, LLC (2413); Colonial Gardens, LLC (9612); DCA Land Holding Company, LLC (4280); DCA Land Illinois, LLC (1397); DCA Land Indiana, LLC (4848); DCA Land Kansas, LLC (8049); DCA Land Kentucky, LLC (4280); DCA Land Missouri, LLC (6728); DCA Land Oregon, LLC (6830); KAT Nurseries, LLC (4682); PlantRight Supply, LLC (3464); Schwope Brothers Tree Farms, LLC (6725); Schwope Brothers West Coast, LLC (2354); Utopian Plants Indiana, LLC (8385); Utopian Transport, LLC (3456); and Utopian Trees, Inc. (3868). The Debtors' corporate headquarters and service address for these Chapter 11 cases is 5840 NW Prairie View Road, Kansas City, Missouri 64151.

1

GlassRatner.

## I.   QUALIFICATIONS OF GLASSRATNER

4.     GlassRatner is a qualified and experienced financial advisor, with the resources, capabilities, and experience the Debtors require.  GlassRatner has a wealth of experience in providing financial advisory services in complex restructurings and reorganizations.  *In re Praesum Healthcare Services, LLC,* Case No. 25-bk-19335, ECF 118 (Bankr. S.D. Fla. September 22, 2025), *In re Healthcare Holdings of Florida LLC, et al.,* Case No. 24-21355-SMG, ECF 121 (Bankr. S.D. Fla. January 14, 2025), *In re Kalera, Inc.,* Case No. 23-90290, ECF 186 (Bankr. N.D. Tex. June 7, 2023); *In re Christian Care Cntrs, Inc.,* Case No. 22-80000, ECF 284 (Bankr. N.D. Tex. Aug. 1, 2022); *In re Limetree Bay Servs., LLC,* Case No. 21-32351, ECF 398 (Bankr. S.D. Tex. July 12, 2021); *In re Fresh Acquisitions LLC et al.,* Case No. 21-30721, ECF 171 (Bankr. N.D. Tex. Apr. 21, 2021); *In re PBS Band, Co.,* Case No. 20-13157, ECF 408 (Bankr. D. Del. Mar. 16, 2021); *In re Loves Furniture Inc.,* Case No. 21-40083, ECF 275 (Bankr. E.D. Mich. Mar. 5, 2021); *In re GGI Holdings, LLC,* Case No. 20-31818, ECF 266 (Bankr. N.D. Tex. June 9, 2020); *In re Epic Companies, LLC,* Case No. 19-34752, ECF 377 (Bankr. S.D. Tex. Nov. 7, 2019) (financial advisor to the Official Committee of Unsecured Creditors); *In re Lockwood Holdings, Inc.,* Case No. 18-30197, ECF 117 (Bankr. S.D. Tex. Feb. 16, 2018).  GlassRatner enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

5.     GlassRatner is well-qualified to represent the Debtors in these Bankruptcy Cases in an efficient and timely manner.  The retention of GlassRatner will maximize the value of the Debtors' estates because of GlassRatner's recognized expertise in in-court restructurings.

## II.   GLASSRATNER'S COMPENSATION

6.     In consideration of the Services, as outlined in the Application, to be provided by GlassRatner, subject to this Court's approval, the applicable provisions of the Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Rules"), and the Local Rules of the United States Bankruptcy Court, Western District of Missouri ("LBR"),

2

and any applicable orders of the Court, the Debtors have agreed to the following fee structure (the "Fee Structure") to: (i) compensate GlassRatner for the Services set forth in this Application on an hourly basis in accordance with GlassRatner's ordinary and customary rates in effect on the date such Services are rendered and (ii) reimburse actual and necessary costs and expenses incurred by GlassRatner in connection with all Services performed on behalf of the Debtors. The customary hourly rates, subject to periodic adjustments, charged by GlassRatner professionals anticipated to be assigned to this Bankruptcy Case are as follows:

| Billing Category | Hourly Billing Rate |
|---|---|
| Irene Byela | $425 |
| Sr. Managing Directors | $525 -$1,075 |
| Managing Directors | $465-$895 |
| Other Staff | $250-$625 |

7.      The hourly rates set forth above are GlassRatner's applicable hourly rates for the work of its professionals and staff members for the engagement set forth in this Application. These hourly rates reflect GlassRatner's normal and customary billing practices for engagements of this complexity and magnitude. GlassRatner revises its hourly rates periodically, generally on January 1 of each year. GlassRatner will notify the Court and U.S. Trustee of any hourly rate increases. GlassRatner will maintain records, in increments of one tenth of an hour, in support of time incurred providing Services under the Engagement Letter as well as costs and expenses incurred in connection with Services rendered in this Bankruptcy Case. Records will be arranged by category and nature of the Services rendered and will include reasonably sufficient descriptions of those Services provided on behalf of the Debtors. GlassRatner's applications for fees and expenses will be paid by the Debtors in the ordinary course of business, as set forth in more detail below.

8.      In addition, GlassRatner will invoice the Debtors for its reasonable out-of-pocket expenses charged during this Bankruptcy Case, which include, among other things, telephone and

3

other charges, mail and express mail charges, travel expenses, and expenses for meals. Further, if GlassRatner and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to the engagement, the Debtors have agreed to compensate GlassRatner at its regular hourly rates and reimburse GlassRatner for reasonable out-of-pocket expenses (including counsel fees) with respect thereto.

9.      GlassRatner will apply to the Court for allowances of compensation and reimbursement of expenses for financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Rules, corresponding local rules, orders of this Court and guidelines established by the United States Trustee.

10.     The Fee Structure summarized in this Declaration is consistent with GlassRatner's normal and customary billing practices for comparably sized and complex chapter 11 cases and transactions, both in and out of court, involving the services to be provided in connection with this Bankruptcy Case. Moreover, the Fee Structure is consistent with and typical of arrangements entered into by GlassRatner and other financial advisory and consulting firms in connection with the rendering of comparable services to clients such as the Debtors. GlassRatner believes that the Fee Structure is both reasonable and on market terms.

11.     GlassRatner has not and will not share or agree to share any of compensation paid or to be paid by the Debtors, other than as permitted by 11 U.S.C. § 504 and Rule 2016. No promises have been made by GlassRatner as to compensation in connection with the Bankruptcy Case.

12.     During the 90 days prior to the Petition Date, GlassRatner received no payments from the Debtors.

### III.    DISINTERESTEDNESS & GLASSRATNER'S CORPORATE STRUCTURE

13.     GlassRatner is an indirect, wholly owned subsidiary of TorQuest Partners Fund VI ("TorQuest"), a Canadian private equity fund. TorQuest is a builder of businesses that support management teams in achieving their vision for the business; TorQuest is not involved in the day-to-day operations of its portfolio companies. GlassRatner is a separate legal entity from TorQuest

4

and TorQuests's other subsidiaries. TorQuest and its subsidiaries, including GlassRatner, observe appropriate legal formalities as separate entities. TorQuest and its subsidiaries adhere to customary confidentiality obligations with respect to client information. GlassRatner personnel do not have access to the files of other TorQuest business lines, nor do other business lines have access to GlassRatner files.

14.    GlassRatner and its affiliates provide services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, relationships with parties that may have relationships with the Debtors. In the ordinary course of business, investment funds affiliated with TorQuest and certain of GlassRatner's and its affiliates' employees, as well as investment funds in which such employees may have financial interests, but over whose investment decisions such employees have no input or control, may acquire, hold, or sell long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or other parties that may have an interest in this Bankruptcy Case or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments, and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the GlassRatner employees who are working on this Bankruptcy Case are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

15.    In the ordinary course of business, GlassRatner and its affiliates from time to time discuss issues concerning stressed and distressed companies with creditors and prospective creditors that are clients of the firm, or that otherwise contact GlassRatner or its affiliates, or that are referred to the firm in light of GlassRatner's or its affiliates' reputation for advising such companies and/or relevant industry expertise. At the time of those contacts, it is not known whether any particular company will actually file for bankruptcy, or if any of these creditors and/or potential creditors will serve on any future committee, or even be a creditor of the relevant estate

5

in the event of a future bankruptcy. GlassRatner may communicate with, and when appropriate or requested, send materials to one, or more, of the 20 largest unsecured creditors identified by a debtor and who are therefore potential members of a creditors' committee if GlassRatner and its professionals either know, work with, are contacted by, or are otherwise referred to the relevant creditor. In some circumstances, GlassRatner and its professionals may contact potential committee members with whom we are not previously familiar.

16.    GlassRatner and its affiliates' personnel may have business associations with certain creditors of the Debtors or counsel, or other professionals involved in this Bankruptcy Case on matters unrelated to this Bankruptcy Case. In addition, in the ordinary course of its business, GlassRatner and its affiliates may engage counsel or other professionals in unrelated matters who now advise, or in the future may advise, creditors or other interested parties in this Bankruptcy Case, or who have advised or currently advise GlassRatner and its affiliates in matters unrelated to this Bankruptcy Case.

17.    To the best of my knowledge, on matters unrelated to the Debtors, GlassRatner and/or its subsidiaries and affiliates have provided due diligence, asset appraisal, consultation, enterprise valuation, and/or field exam services in the ordinary course of business to many lenders, investors, and other market participants, some of whom may be creditors, equity security holders, and other parties in interest in this Bankruptcy Case.

18.    In connection with our proposed retention by the Debtors in these Bankruptcy Cases, we undertook to determine whether we have any conflicts or other relationships that might cause GlassRatner to not be disinterested or to hold or represent an interest adverse to the Debtor.

19.     To determine GlassRatner's relationship with parties in interest in this Bankruptcy Case, GlassRatner obtained from the Debtors or its representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (individually, an "Interested Party" and collectively, the "Interested Parties"). The list of Interested Parties is attached to the Exhibit List as **Exhibits "B" and "C"**. A search was performed for the connections to the Interested Parties, and based on that review, GlassRatner represents that, to the best of its knowledge, GlassRatner knows of no fact or situation that would represent a conflict of interest for GlassRatner with regard to the Debtors.

20.     The review of the Interested Parties described herein was conducted by GlassRatner pursuant to the following procedures: we check the internal databases of GlassRatner and its subsidiaries, and additionally, ask our corporate senior management, finance, accounting, compliance, and legal departments, to review the list of Interested Parties and to identify and describe any relationships. Exhibit "C" includes a list of connections between GlassRatner affiliates and parties listed on Exhibit "B".

21.     Based on the process set forth herein, it is my understanding that the overall design and implementation of GlassRatner's current procedures provide a reasonable level of comfort to GlassRatner that relationships and potential conflicts will be identified. Continued inquiry will be made following the filing of this Declaration by undertaking the same procedures described herein on a periodic basis, with additional disclosures to be filed in this Court if necessary or otherwise appropriate.

22.     Except as otherwise disclosed herein, and insofar as I have been able to ascertain after due diligence, to the best of my knowledge, information, and belief after reasonable inquiry, neither I, GlassRatner, nor any of the professionals or employees participating in or connected with GlassRatner's engagement with the Debtors, advise any party in interest or any entity in this Bankruptcy Case other than the Debtors. Thus, GlassRatner is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), as modified by 11 U.S.C. § 1107(b). Except as outlined above, GlassRatner's due diligence has revealed that GlassRatner and its professionals:

7

a.      do not hold or represent any interest adverse to the Debtors or its creditors;

b.      are disinterested so as to render GlassRatner eligible to serve as financial advisor for the Debtors under 11 U.S.C. § 327(a);

c.      are not a creditor, security holder, or insider of the Debtors and do not represent any entity (or its attorneys or accountants) other than the Debtors in connection with this Bankruptcy Case;

d.      are not, and were not, within two (2) years before the Petition Date, a director, officer, or employee of any of the Debtors;

e.      do not have any interest materially adverse to the interests of the Debtors or their estates or any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or any interest in, the Debtor or for any other reason; and

f.      except as set forth herein, have no connections with the Debtors, creditors, equity interest holders, or any party in interest, or with the respective attorneys or accountants of the foregoing, or with the Office of the United States Trustee or any person employed with the United States Trustee, or with any judge of the United States Bankruptcy Court for the Western District of Missouri.

23.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, GlassRatner has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this Bankruptcy Case.

24.     In addition, GlassRatner does not believe that any relationships that GlassRatner or any of its professionals or employees participating in or connection with GlassRatner's engagement with the Debtor may have with any Interested Parties in connection with any unrelated matter will interfere with or impair GlassRatner's representation of the Debtor in this Bankruptcy Case.

25.     Based on the above-described investigation and due diligence performed by

GlassRatner, GlassRatner also believes that approval of its employment as requested in the Application is not prohibited under the provisions of Rule 5002.

26.     Based on the results of its review, to the best of my knowledge, except as discussed herein or as listed on Exhibit "C", GlassRatner does not have an active relationship with any of the parties listed in Exhibit "B" in matters related to this proceeding.

27.     In addition to the above, GlassRatner has provided and could reasonably be expected to continue to provide services unrelated to the Debtor's case for some of the various other entities shown on Exhibit "C". To the best of my knowledge, no services have been provided to these parties in interest regarding their rights in the Debtor's case, nor does GlassRatner's involvement in this case compromise its ability to continue such consulting services.

28.     GlassRatner and its affiliates appear in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, investment bankers, and financial consultants, who may represent claimants and parties in interest in the Debtor's case. In addition, GlassRatner and its affiliates may have in the past performed, currently be performing, or may perform in the future financial advisory services for various attorneys and law firms and may have in the past been, currently be, or may in the future be represented by attorneys and law firms, some of whom may become involved in this proceeding. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in the matter upon which GlassRatner is to be employed.

29.     Except for post-petition services rendered by Brent King in his capacity as Chief Executive Officer and Chief Restructuring Officer, GlassRatner does not believe it is a "creditor" of the Debtor within the meaning of 11 U.S.C. § 101(1). Further, neither I nor any member of the GlassRatner engagement team servicing the Debtor, to the best of my knowledge, is a holder of any of the Debtor's debt or equity securities, nor has or has ever been, a general or limited partner of a partnership in which the Debtor is also a general or limited partner.

9

30. To the best of my knowledge, GlassRatner is a "disinterested person" within the meaning of 11 U.S.C. § 101(14), as referred to in 11 U.S.C. § 327(a).

31. Pursuant to Rule 2014(a), GlassRatner will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

32. GlassRatner is willing to be retained by the Debtor as its financial advisor consistent with, and to perform the services (collectively, the "Services") outlined in, the Engagement Letter attached hereto as **Exhibit "A"** filed contemporaneously herewith, and will make appropriate application to this Court for compensation and reimbursement of out-of-pocket expenses, all in accordance with the provisions of the Bankruptcy Code, the Rules, the LBR, and any Orders of the court entered in this Bankruptcy Case.

33. I am informed and believe the Services provided by GlassRatner will complement and not duplicate the services rendered by any other professional retained in the Bankruptcy Case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and corrected.

Executed on October 5, 2025.

Joseph V. Pegnia

Exhibit A
Engagement Letter



**GlassRatner**

3445 Peachtree Road, Suite 1225
Atlanta, GA 30326
Tel: (470) 346-6800
glassratner.com

Effective as of September 11, 2025

Mr. Brent King
Chief Executive Officer
DCA Outdoor, Inc.
5840 NW Prairie View Road
Kansas City, MO 64151
bking@glassratner.com

**Re:    DCA Outdoor, Inc., et al. Chapter 11 cases  (the "Matter")**

Dear Mr. King:

This engagement letter (this "Agreement") confirms our understanding that (i) DCA Outdoor, Inc., (ii) its affiliates that are jointly administered debtors which are listed on Exhibit A hereto, (collectively "DCA Outdoor" or "Client" or "you") are jointly and severally engaging GlassRatner Advisory & Capital Group, LLC ("we," "us," "our" or "GlassRatner") to provide financial advisory services in connection with the above Matter.

Mr. Joseph Pegnia will have overall engagement planning responsibilities and will lead our day-to-day activities and report directly to you. Although Mr. Pegnia will lead the firm's activities, they will assign other professionals to the Matter as needed.

## Scope of Services

We understand that we are being retained to provide financial advisory services (including but not limited to services related to marketing and selling assets), and bankruptcy administration services related to the Matter. Although matters such as this are dynamic, and the services provided by GlassRatner may change as the Client provides additional information, it is our understanding that the current Scope of Services may include the following:

- Assist the Client in preparing or supervising the preparation of reports as may be required by applicable federal and local bankruptcy statutes and rules, e.g., "Monthly Operating Reports" (MORs), and other reports as may be requested or required by the court for the benefit of the court, creditors, and other constituents in any Bankruptcy Case;

- Assist the Client with reviewing, evaluating and analyzing the financial ramifications of proposed transactions for which the Client may seek court approval;

 GlassRatner

- Assist the Client by testifying before the court, as may be required, on behalf of the Client; and

- Assist the Client by performing such other duties or tasks that fall within the customary responsibilities of a debtor in possession's financial advisor as requested by the Client's management and/or board of directors.

In connection with this Matter, the Client hereby authorizes GlassRatner to engage in direct communications with (i) Frontier Farm Credit, FLCA, and Frontier Farm Credit, PCA, ("Lenders"), the lenders under that certain Fourth Amended and Restated Credit Agreement between the Client and Lenders, dated as of December 22, 2023, (as same may be amended, restated, modified and/or supplemented from time to time) and (ii) Lenders' attorneys, financial advisors, and other professionals and representatives (collectively with Lenders, the "Lender Parties"), and to provide information as may be requested by Lender Parties.  The Client also authorizes GlassRatner to engage in direct communications with the Official Committee of Unsecured Creditors in the Chapter 11 cases and their court approved legal counsel and financial advisor.

Our analyses will be based on documents produced to GlassRatner and independent research. We assume the Client has provided all relevant information they are aware of regarding the services and the Matter and GlassRatner is entitled to rely thereon.

If the Client requests that GlassRatner provide services in addition to those specified in the Scope of Services, e.g., litigation support consulting, expert witness testimony, forensic accounting, investment banking, appraisal, etc., those services may be provided pursuant to a separate engagement agreement on mutually agreeable terms.

## Compensation

We bill our professional time according to the number of hours worked at our standard hourly billing rate plus out-of-pocket costs incurred. Our hourly rates for the individuals we anticipate using on this project are as follows:

| | |
|---|---|
| Irene Byela | $425 |
| Senior Managing Directors | $525 -1,075 |
| Managing Directors | $465 - 895 |
| Other | $250 - 625 |

GlassRatner reviews its hourly rates each January 1, and the Client should anticipate an annual rate increase on January 1 and annually thereafter should the engagement still be active at that time. We will bill non-working travel time at one-half our regular hourly rates.

If GlassRatner is retained in the Bankruptcy Case, its monthly fees will be paid in accordance with any applicable federal and local statutes, rules, and procedures and the Bankruptcy Court's orders.    We

 GlassRatner

reserve the right to defer rendering further services until we receive past due amounts. Our fees are not contingent on the outcome of the Matter.

## Limitations

GlassRatner is not a public accounting firm. While our work may involve analysis of accounting records, the engagement does not include an audit or review of existing records in accordance with generally accepted auditing standards or standards for review engagements. Accordingly, we will not be expressing an audit opinion on any of the financial or other data received in this engagement. GlassRatner is not a law firm and will not provide legal or tax advice on any transaction or financing in conjunction with this assignment.

The working papers and other materials created by us during this engagement are our property. At the completion of our engagement, all of the Client's documents will be returned to the Client at the Client's request. Unless we are notified otherwise, or unless the Client requests the files to be returned to the Client, we assume that all documents in our possession may be destroyed one year from the completion of the Matter, or the passage of one year without our actively participating in the Matter. The Client acknowledges that all advice (written or oral) given by GlassRatner to the Client is intended solely for the benefit and use of the Client. No advice (written or oral) of GlassRatner hereunder shall be used, reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, nor shall any public references to GlassRatner be made by the Client without the prior written consent of GlassRatner. Provided, however, that nothing contained herein shall impair the information rights of the Lender Parties set forth in the section titled "Scope of Services" above and the Client may disclose any such material to the Lender Parties.

Please note that it is not our practice to retain working papers, notes, or data files that have been updated or superseded. If you wish us to follow a different retention practice, please indicate your specific request(s) in writing when returning a copy of this Agreement.

## Indemnification and Limitation of Liability

The Client agrees to indemnify and hold harmless GlassRatner and any employees or affiliated persons or entities of GlassRatner and their respective directors, officers, members, managers, employees, and agents ("Indemnified Parties") from and against all claims, demands, penalties, liabilities, losses and damages (collectively, "Losses") arising out of or related to this engagement and/or the services performed hereunder, except to the extent such Loss is finally judicially determined or determined pursuant to a final, binding decision of an arbitrator in accordance with the dispute resolution provisions of this Agreement to have resulted primarily from the gross negligence or willful misconduct of GlassRatner. Further, the Client

 GlassRatner

agrees to promptly reimburse GlassRatner for any legal fees or other expenses reasonably incurred by GlassRatner in connection with such Losses as they are incurred. THE CLIENT ALSO AGREES THAT NO INDEMNIFIED PARTY SHALL HAVE ANY LIABILITY (WHETHER DIRECT OR INDIRECT, IN CONTRACT OR TORT OR OTHERWISE) TO THE CLIENT FOR OR IN CONNECTION WITH THE ENGAGEMENT OF GLASSRATNER, IN EXCESS OF THE FEES PAID TO GLASSRATNER HEREUNDER, INCLUDING ANY REASONABLE ATTORNEYS' FEES AND COURT COSTS, EXCEPT TO THE EXTENT THAT ANY SUCH LIABILITY FOR LOSSES, CLAIMS, DAMAGES, LIABILITIES OR EXPENSES IS FINALLY JUDICIALLY DETERMINED OR DETERMINED PURSUANT TO A FINAL, BINDING DECISION OF AN ARBITRATOR IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS OF THIS AGREEMENT TO HAVE RESULTED PRIMARILY FROM SUCH INDEMNIFIED PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. The Client further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding. The provisions of this paragraph shall survive the completion of the engagement and/or the expiration or termination of this engagement or this Agreement. In the event that a Bankruptcy Case is filed, the provisions of this paragraph shall be subject to approval of the Bankruptcy Court.

## Termination

This Agreement may be terminated immediately by GlassRatner or the Client, in their sole discretion, for any reason whatsoever and without prior notice. Upon termination of this Agreement, GlassRatner shall be entitled to all fees and expenses incurred pursuant to this Agreement prior to notice of termination, subject to any dispute concerning the fees due and the dispute provision included in this Agreement. The termination of this Agreement shall not relieve the Client or GlassRatner from the provisions of this Agreement relating to indemnification, limitation of liability, settlement, the payment of the fees, costs and expenses payable hereunder whether or not accrued prior thereto, confidentiality, the status of GlassRatner as an independent contractor, the limitation on the use, reliance on, and disclosure of GlassRatner's advice, governing law and dispute resolution.

## Confidentiality

GlassRatner agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any information relating to the Matter, provided that such disclosure may be made (a) to any person who is an officer, director, member, manager, advisors, or employee of GlassRatner or its affiliates ("Representatives") solely for their use in the performance of the services hereunder and on a need-to-know basis, (b) with the prior written consent of the Client, or (c) pursuant to law, regulation, subpoena, order issued by a court, arbitrator or governmental body, agency or official, or other legal process. In the

 GlassRatner

event that GlassRatner shall receive a request to disclose any of the terms of this Agreement pursuant to section (c) of the preceding sentence, GlassRatner shall, to the extent legally permissible, (i) promptly notify the Client, (ii) consult with the Client (at the Client's expense) on the advisability of taking steps to resist or narrow such request and (iii) if disclosure is required or deemed advisable, reasonably cooperate with the Client, at the Client's sole cost and expense, in any attempt Client may make to obtain an order or other assurance that confidential treatment will be accorded those terms of this Agreement that are disclosed. The confidentiality restrictions contained herein shall continue for a period of two (2) years from the date hereof and shall not apply to information that: (i) at the time of disclosure by the Client to GlassRatner or its Representatives is, or thereafter becomes, generally available to the public, other than as a direct result of a breach by GlassRatner of its obligations under this Agreement; (ii) prior to or at the time of disclosure by the Client to GlassRatner or its Representatives was already in the possession of GlassRatner or any of its Representatives; (iii) at the time of disclosure is, or thereafter becomes, available to GlassRatner or its Representatives from a third-party source, provided that, to GlassRatner's or its Representatives' knowledge, such third party is not and was not prohibited from disclosing such Confidential Information to GlassRatner; or (iv) is or was independently developed by GlassRatner or its Representatives without reference to the confidential information provided to GlassRatner by the Client.

## Integration; Severability

This Agreement contains the entire agreement and understanding between GlassRatner and the Client concerning the Matter. This Agreement supersedes and replaces all prior negotiations, estimates, proposed agreements, and/or agreements (oral and written) concerning GlassRatner's services for the Client in conjunction with the Matter. If any portion of this Agreement shall be held or made unenforceable or invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect, and, to the fullest extent, the provisions of this Agreement shall be severable.

## Governing Law; Dispute Resolution

The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Missouri without regard to choice of law or principles thereof. The parties agree that any disputes arising out of this Agreement shall be submitted to final, binding arbitration conducted in Jackson County, Missouri under the Expedited Arbitration Procedures and Rules of the Judicial Arbitration and Mediation Services Inc. ("JAMS") before a single, neutral arbitrator who shall follow Missouri law and the Federal Rules of Evidence and have no authority to award punitive damages. Either party may enforce a final arbitration award in any court of competent jurisdiction in Jackson County, Missouri including an award of costs, fees and expenses incurred in enforcing the award. The parties shall keep confidential, and not disclose the fact that there is a dispute between the parties, the details of the dispute, the fact of the arbitration and all details relating to the proceeding. Notwithstanding the foregoing, either party shall be entitled to seek injunctive relief in the state or federal courts of the State of Missouri upon a showing that



a material portion of this Agreement was violated, and emergency relief is necessary to avoid irreparable harm. The prevailing party in any dispute arising hereunder shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs and the costs of experts, in any proceedings, including, but not limited to arbitration, litigation, bankruptcy, and in any appellate proceedings as well. Notwithstanding the foregoing, disputes shall be submitted to the Bankruptcy Court during the pendency of any such case.

## GlassRatner Employee Placement Fee

If, at any time during the period that commences on the date of this Agreement and terminates on the date that is six (6) months from the date of the termination or expiration of this Agreement (the "Solicitation Period"), the Client hires a GlassRatner employee who works on this engagement during the Solicitation Period, the Client agrees to pay a placement fee to GlassRatner in the amount of twenty percent (20%) of the employee's estimated total first year's compensation, including estimated commissions and bonuses, and any signing bonus. Such fee is not subject to reduction even if the employee's employment terminates. The Client will be obligated to pay such fee within thirty (30) days of the first day of the employee's employment by the Client, unless otherwise mutually agreed to by the Client and GlassRatner.

## Contact Information

All correspondence should be directed to:

Joseph V. Pegnia
Senior Managing Director
GlassRatner Advisory & Capital Group, LLC
3445 Peachtree Road NE
Suite 1225
Atlanta, GA 30326
Phone:  470-346-6833
Email: jpegnia@glassratner.com

## Conclusion

If the arrangements described in this Agreement are acceptable to the Client, and the services summarized above are in accordance with the understanding of the Client, please sign and return a copy of this Agreement. This Agreement may be executed in counterparts. Signatures sent by fax or as pdf shall be treated as originals.

*[Signature Page Follows}*



3445 Peachtree Road, Suite 1225
Atlanta, GA 30326
Tel: (470) 346-6800
glassratner.com

We look forward to working with you on this Matter.

Yours very truly,

GlassRatner Advisory & Capital Group, LLC

Joseph V. Pegnia
Senior Managing Director

Accepted and Agreed:

_____        _____
Brent King                                                         10-5-2025
Chief Executive Officer                                 Date



## Exhibit A

Anna Evergreen, LLC
Brehob Nurseries, LLC
Colonial Farms, LLC
Colonial Gardens Developments, LLC
Colonial Gardens, LLC
DCA Land Holding Company, LLC
DCA Land Illinois, LLC
DCA Land Indiana, LLC
DCA Land Kansas, LLC
DCA Land Kentucky, LLC
DCA Land Missouri, LLC
DCA Land Oregon, LLC
KAT Nurseries, LLC
PlantRight Supply, LLC
Schwope Brothers Tree Farm, LLC
Schwope Brothers West Coast, LLC
Utopian Plants Indiana, LLC
Utopian Transport, LLC
Utopian Trees, Inc.

## Exhibit B

| | |
|---|---|
| **Debtors** | Anna Evergreen, LLC |
| | Brehob Nurseries, LLC |
| | Colonial Farms, LLC |
| | Colonial Gardens Developments, LLC |
| | Colonial Gardens, LLC |
| | DCA Land Holding Company, LLC |
| | DCA Land Illinois, LLC |
| | DCA Land Indiana, LLC |
| | DCA Land Kansas, LLC |
| | DCA Land Kentucky, LLC |
| | DCA Land Missouri, LLC |
| | DCA Land Oregon, LLC |
| | KAT Nurseries, LLC |
| | PlantRight Supply, LLC |
| | Schwope Brothers Tree Farms, LLC |
| | Schwope Brothers West Coast, LLC |
| | Utopian Plants Indiana, LLC |
| | Utopian Transport, LLC |
| | Utopian Trees, Inc. |
| **Debtors' Counsel** | Evans & Mullinix, P.A. (current counsel) |
| | Lewis Rice LLC |
| **Secured Creditor** | Frontier Farm Credit, FLCA, Frontier Farm Credit, PCA |
| **Secured Creditor Counsel** | Kutak Rock (Lisa Peters) |
| **Secured Creditor Financial Advisor** | Ampleo |
| **Members of the Official Committee of Unsecured Creditors** | Creative Planning Business Services |
| | Greendell Landscape Solutions, Inc. |
| | Greenleaf Nursery Co. |
| | Helios Nursery |
| | Left Coast Logistics, LLC |
| | Marion Agricultural Services, Inc. |
| | West Michigan Farms, Inc. |
| **Official Committee Counsel** | Spencer Fane |
| **Official Committee Financial Advisor** | Dundon Advisors |
| **Other Relevant Parties** | Tory Schwope - founder / owner / former CEO |
| | Focus Management Group / former CRO |

12

|  | Missouri Department of Revenue |
|---|---|
|  | Edmundson, Inc. d/b/a Arbor Valley, Green River Holdings LLC, Rio Verde Plantas, LLC |
|  | Spring Meadow Nursery, Inc. |
| **Other Relevant Party's Counsel** | Polsinelli PC (for Edmundson, Inc.) |
| **Other Relevant Facts** | Brent King is Chief Executive Officer and Chief Restructuring Officer |

13

Exhibit C

GlassRatner Advisory & Capital Group LLC is employed in other matters unrelated to these Chapter 11 cases in which the following professional firms are also involved:

1.    Polsinelli

2.    Dundon Advisors

3.    Spencer Fane

4.    Ampleo

Brent King, the Debtors' CEO and CRO, is an employee of GlassRatner Advisory & Capital Group LLC

4907-2224-7796, v. 1