# TRIPLE NET LEASE

**THIS TRIPLE NET LEASE**, made as of this 29th day of December, 2022, by and between Tory and Beth Ann Schwope, a married couple, with an office at 12517 S Harris Rd, Lee's Summit, MO 64034 (herein called **"Landlord")**, and Schwope Brothers Tree Farms, LLC an Missouri Limited Liability Company, with an office at 5609 N Blue Valley Road, Independence, MO (herein called **"Tenant")**.

**Section l. Premises.**

(A) Landlord leases to Tenant and Tenant rents from Landlord the following premises:

All that certain tract of real property located in the County of Jackson, and State of Missouri, described on Exhibit A attached hereto and incorporated herein by this reference, and outlined in red on the site plan ("Site Plan") which is attached hereto as Exhibit B and incorporated herein by this reference.

(B) The tract of land described on Exhibit A is referred to as the "Demised Land". All improvements now or hereinafter erected on the Demised Land are hereinafter referred to as the **"Improvements"**. The Demised Land together with the Improvements are hereinafter referred to as the **"Premises"**. The Premises excludes the main residence as noted in Exhibit B.

**Section 2. Term.**

(A) The initial tenn of this Lease the "Term" is for Five years, commencing on the 1st day of January 2023 and ending on the 31st day of December 2028. The 1st day of January of the first year of the term will be referred to as the **"Commencement Date"**.

(B) The term **"Lease Year"** shall mean a period of 12 consecutive full calendar months following the Commencement Date.

**Section 3. Rent.**

Tenant shall pay Landlord, monthly, as rent hereunder, **("Minimum Rent")** the following: Upon the Commencement Date and during the period from the Commencement Date through the end of the Term, the sum of Ninety Six Thousand Five Hundred and Nine dollars ($96,509.00) per annum, payable in 12 monthly installments of Eight Thousand Forty Two dollars and two cents ($8,042.02) throughout the calendar year due on the first day of the month, with a deposit amount of Fourteen Thousand Nine Hundred and Nine dollars due upon execution of lease.

**Section 4. No Abatement and Additional Rent.**

(A) In addition to the Minimum Rent, Tenant shall pay all other charges required to be paid by Tenant under this Lease as "additional rent", whether or not the same are designated "additional rent". If such charges are not paid at the time provided in this Lease, they shall be payable as additional rent upon demand or with the next installment of Minimum Rent thereafter falling due, whichever shall first occur, but nothing herein contained shall be deemed to suspend or authorize delay in the payment of any charge at the time the same becomes due and payable under this Lease. The Minimum Rent and additional rent are herein collectively referred to a **"Rent."**

(B) This Lease shall be deemed and construed to be a "net lease", it being the intent hereof that Landlord shall receive, except as herein otherwise specifically provided, all Rent free from any charges, taxes, assessments, fees, impositions, expenses, set-offs or deductions of any and eve ly kind or nature whatsoever.

**Section 5. Taxes.**

(A) The term **"Taxes"** shall mean all real estate taxes, assessments for public improvements or benefits (whether or not commenced or completed during the term of this Lease), water, sewer and other rents, rates and charges, excises, levies, license fees, permit fees and other authorization fees and all other charges (in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen), of every character (including all penalties or interest thereon) which at any time during or in respect of or prior to the term of this Lease may be assessed, levied, confirmed or imposed on or in respect of or be a lien upon (i) the Premises or any part thereof or any rent therefrom or any estate, right or interest therein, or (ii) any occupant's use or possession of the Premises or any part thereof. The term "Taxes" shall not include any franchise similar tax of Landlord, or any income or excess profits tax of Landlord determined on the basis of its general income or revenues.

(B) Landlord will deliver to Tenant any tax bill received by Landlord covering only the Premises promptly after receipt thereof by Landlord.

**Section 6. Alterations; Improvements; Signage.**

Tenant may make or cause to be made any alterations, or additions to the Improvements, or erect new Improvements and/or signage to the Premises as mutually agreed between Landlord and Tenant prior to any alternations, additions or new improvements. In this process, Tenant will not cause existing structures or improvements to be destroyed, compromised or otherwise devalued.

**Section 7. Tenant's Liens.**

If any mechanic's or materialman's lien is filed against the Premises by reason of work, labor, services or materials performed or furnished to Tenant or anyone holding any part of the Premises under Tenant, Tenant shall, within ninety (90) days after receiving written Notice hereunder from Landlord of the filing thereof, cause such lien to be discharged of record by payment, bond, order of a court of competent jurisdiction, or otherwise. The foregoing shall not be construed to limit Tenant's rights to contest the basis for said lien provided the same is discharged of record as aforesaid. In the event of Tenant's failure to discharge any such lien within such 90-day period, Landlord may remove said lien by paying the full amount thereof or by bonding or in any other manner Landlord deems appropriate, without investigating the validity thereof and irrespective of the fact that Tenant may contest the propriety or the amount thereof, and Tenant upon demand shall pay Landlord the amount so paid out by Landlord in connection with the discharge of said lien, together with Landlord's expenses incurred in connection therewith, including reasonable attorneys' fees. Nothing contained in this Lease shall be construed as a consent on the part of Landlord to subject Landlord's estate in the Premises to any lien or liability under the lien laws of the state of Missouri.

**Section 8. Compliance with Legal Requirements.**

Tenant shall promptly comply with all applicable governmental laws, codes and regulations (collectively, **"Laws")**, and shall procure and maintain all permits, licenses and other authorizations required for any use of the Premises or any part thereof then being made, and for the lawful and proper installation, operation and maintenance of all equipment and appliances necessary or appropriate for the operation and maintenance of the Premises.

**Section 9. Repairs.**

Tenant agrees that Landlord shall have no obligation under this Lease at any time during the term to make any repairs or replacements of any part of the Premises or any alteration, addition, substitution or improvement thereof or thereto, whether structural or otherwise, it being the intent hereof that the Minimum Rent received by Landlord shall be free and clear of any expense incurred by Landlord under this Lease in connection with any construction, care, maintenance, operation, repair, replacement, alteration, addition, substitution and improvement of or to the Premises.

**Section 10. Property Insurance.**

Tenant shall keep in force with an insurance company authorized to do business in the State, insuring the Improvements in an amount equal to 100% of the replacement cost thereof (excluding foundations and underground utilities). The proceeds of such insurance shall be held in trust by Tenant for use in repairing and restoring the items covered thereby. The foregoing policy of insurance shall be issued in favor of and in the names of Landlord and Tenant, as their interests may appear, and shall be endorsed with a standard "mortgagee loss payable clause" in favor of the holder of any "Mortgage" (as defined herein) on the Premises. Tenant shall furnish Landlord and the holder of any Mortgage with a ce1tificate evidencing such coverage, which certificate shall provide that the insurance shall not be canceled, materially amended or allowed

to lapse without thirty (30) days' prior written notice thereof being given by the insurance carrier to the certificate holders. The loss, if any, under all policies described in this Section shall be adjusted by Landlord and Tenant. Tenant shall comply with all rules, recommendations and requirements of Tenant's hazard insurer applicable to the Premises.

**Section 11. Waiver of Subrogation.**

Anything in this Lease to the contrary notwithstanding, it is agreed that each party (the **"Releasing Party")** hereby releases the other (the **"Released Party")** from any liability which the Released Party would, but for this Section 17, have had to the Releasing Party during the term of this Lease, resulting from the occurrence of any accident or occurrence or casualty (i) which is or would be covered by a policy of property insurance on a special causes of loss form (i1Tespective of whether such coverage is being carried by the Releasing Party), or (ii) covered by any other property damage insurance being carried by the Releasing Party at the time of such occurrence, which accident, occurrence or casualty may have resulted in whole or in part from any act or neglect of the Released Party, its members, managers, officers, agents or employees; PROVIDED, HOWEVER, the release above set forth shall become inoperative and null and void if the Releasing Party wishes to place the appropriate insurance with an insurance company which (y) takes the position that the existence of such release vitiates or would adversely affect any policy so insuring the Releasing Party in a substantial manner and notice thereof is given to the Released Party, or (z) requires the payment of a higher premium by reason of the existence of such release, unless in the latter case the Released Party within IO days after notice thereof from the Releasing Party pays such increase in premium.

**Section 12. Liability Insurance.**

Tenant shall keep in force with an insurance company authorized to do business in the State, a policy of commercial general liability insurance with respect to the Premises, on which the limits of coverage for bodily injury (including death) and property damage shall not be less than $2,000,000.00 (combined single limits for bodily injury and property damage). In addition to Tenant, the policy shall also name Landlord, as well as any person, firm or corporation designated by Landlord and in privily with it and mortgagee for the holder of any mortgage on the premises, as an additional insured. Tenant shall upon demand deliver to Landlord a certificate evidencing the aforesaid coverage, which certificate shall provide that the insurance evidenced thereby shall not be canceled, materially modified or allowed to lapse without thirty (30) days' prior written notice thereof being given by the insurance carrier to the certificate holders.

**Section 13. Indemnification by Tenant.**

Tenant will protect, indemnify and save harmless Landlord from and against all liabilities, obligations, claims, damages, penalties, causes of action, reasonable costs and expenses (including, without limitation, attorneys' fees) arising or occurring during the term of this Lease or any period during which Tenant is occupying the Premises by reason of

# TRIPLE NET LEASE

**THIS TRIPLE NET LEASE,** made as of this 29th day of December, 2022, by and between Tory and Beth Ann Schwope, a married couple, with an office at 12517 S Harris Rd, Lee's Summit, MO 64034 (herein called **"Landlord"),** and Schwope Brothers Tree Farms, LLC an Missouri Limited Liability Company, with an office at 5609 N Blue Valley Road, Independence, MO (herein called **"Tenant")**.

**Section l. Premises.**

(A) Landlord leases to Tenant and Tenant rents from Landlord the following premises:

> All that certain tract of real property located in the County of Jackson, and State of Missouri, described on Exhibit A attached hereto and incorporated herein by this reference, and outlined in red on the site plan ("Site Plan") which is attached hereto as Exhibit B and incorporated herein by this reference.

(B) The tract of land described on Exhibit A is referred to as the "Demised Land". All improvements now or hereinafter erected on the Demised Land are hereinafter referred to as the **"Improvements"**. The Demised Land together with the Improvements arc hereinafter referred to as the **"Premises".** The Premises excludes the main residence as noted in Exhibit B.

**Section 2. Term.**

(A) The initial tenn of this Lease the "Term" is for Five years, commencing on the 1st day of January 2023 and ending on the 31st day of December 2028. The 1st day of January of the first year of the term will be referred to as the **"Commencement Date".**

(B) The term **"Lease Year"** shall mean a period of 12 consecutive full calendar months following the Commencement Date.

**Section 3. Rent.**

Tenant shall pay Landlord, monthly, as rent hereunder, **("Minimum Rent")** the following: Upon the Commencement Date and during the period from the Commencement Date through the end of the Term, the sum of Ninety Six Thousand Five Hundred and Nine dollars ($96,509.00) per annum, payable in 12 monthly installments of Eight Thousand Forty Two dollars and two cents ($8,042.02) throughout the calendar year due on the first day of the month, with a deposit amount of Fourteen Thousand Nine Hundred and Nine dollars due upon execution of lease.

**Section 4. No Abatement and Additional Rent.**

(A) In addition to the Minimum Rent, Tenant shall pay all other charges required to be paid by Tenant under this Lease as "additional rent", whether or not the same are designated "additional rent". If such charges are not paid at the time provided in this Lease, they shall be payable as additional rent upon demand or with the next installment of Minimum Rent thereafter falling due, whichever shall first occur, but nothing herein contained shall be deemed to suspend or authorize delay in the payment of any charge at the time the same becomes due and payable under this Lease. The Minimum Rent and additional rent are herein collectively referred to a **"Rent."**

(B) This Lease shall be deemed and construed to be a "net lease", it being the intent hereof that Landlord shall receive, except as herein otherwise specifically provided, all Rent free from any charges, taxes, assessments, fees, impositions, expenses, set-offs or deductions of any and eve1y kind or nature whatsoever.

**Section 5. Taxes.**

(A) The term **"Taxes"** shall mean all real estate taxes, assessments for public improvements or benefits (whether or not commenced or completed during the term of this Lease), water, sewer and other rents, rates and charges, excises, levies, license fees, permit fees and other authorization fees and all other charges (in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen), of every character (including all penalties or interest thereon) which at any time during or in respect of or prior to the term of this Lease may be assessed, levied, confirmed or imposed on or in respect of or be a lien upon (i) the Premises or any part thereof or any rent therefrom or any estate, right or interest therein, or (ii) any occupant's use or possession of the Premises or any part thereof. The term "Taxes" shall not include any franchise similar tax of Landlord, or any income or excess profits tax of Landlord determined on the basis of its general income or revenues.

(B) Landlord will deliver to Tenant any tax bill received by Landlord covering only the Premises promptly after receipt thereof by Landlord.

**Section 6. Alterations; Improvements; Signage.**

Tenant may make or cause to be made any alterations, or additions to the Improvements, or erect new Improvements and/or signage to the Premises as mutually agreed between Landlord and Tenant prior to any alternations, additions or new improvements. In this process, Tenant will not cause existing structures or improvements to be destroyed, compromised or otherwise devalued.

**Section 7. Tenant's Liens.**

If any mechanic's or materialman's lien is filed against the Premises by reason of work, labor, services or materials performed or furnished to Tenant or anyone holding any part of the Premises under Tenant, Tenant shall, within ninety (90) days after receiving written Notice hereunder from Landlord of the filing thereof, cause such lien to be discharged of record by payment, bond, order of a court of competent jurisdiction, or otherwise. The foregoing shall not be construed to limit Tenant's rights to contest the basis for said lien provided the same is discharged of record as aforesaid. In the event of Tenant's failure to discharge any such lien within such 90-day period, Landlord may remove said lien by paying the full amount thereof or by bonding or in any other manner Landlord deems appropriate, without investigating the validity thereof and irrespective of the fact that Tenant may contest the propriety or the amount thereof, and Tenant upon demand shall pay Landlord the amount so paid out by Landlord in connection with the discharge of said lien, together with Landlord's expenses incurred in connection therewith, including reasonable attorneys' fees. Nothing contained in this Lease shall be construed as a consent on the part of Landlord to subject Landlord's estate in the Premises to any lien or liability under the lien laws of the state of Missouri.

**Section 8. Compliance with Legal Requirements.**

Tenant shall promptly comply with all applicable governmental laws, codes and regulations (collectively, **"Laws")**, and shall procure and maintain all permits, licenses and other authorizations required for any use of the Premises or any part thereof then being made, and for the lawful and proper installation, operation and maintenance of all equipment and appliances necessary or appropriate for the operation and maintenance of the Premises.

**Section 9. Repairs.**

Tenant agrees that Landlord shall have no obligation under this Lease at any time during the term to make any repairs or replacements of any part of the Premises or any alteration, addition, substitution or improvement thereof or thereto, whether structural or otherwise, it being the intent hereof that the Minimum Rent received by Landlord shall be free and clear of any expense incurred by Landlord under this Lease in connection with any construction, care, maintenance, operation, repair, replacement, alteration, addition, substitution and improvement of or to the Premises.

**Section 10. Property Insurance.**

Tenant shall keep in force with an insurance company authorized to do business in the State, insuring the Improvements in an amount equal to 100% of the replacement cost thereof (excluding foundations and underground utilities). The proceeds of such insurance shall be held in trust by Tenant for use in repairing and restoring the items covered thereby. The foregoing policy of insurance shall be issued in favor of and in the names of Landlord and Tenant, as their interests may appear, and shall be endorsed with a standard "mortgagee loss payable clause" in favor of the holder of any "Mortgage" (as defined herein) on the Premises. Tenant shall furnish Landlord and the holder of any Mortgage with a ce1tificate evidencing such coverage, which certificate shall provide that the insurance shall not be canceled, materially amended or allowed

to lapse without thirty (30) days' prior written notice thereof being given by the insurance carrier to the certificate holders. The loss, if any, under all policies described in this Section shall be adjusted by Landlord and Tenant. Tenant shall comply with all rules, recommendations and requirements of Tenant's hazard insurer applicable to the Premises.

**Section 11. Waiver of Subrogation.**

Anything in this Lease to the contrary notwithstanding, it is agreed that each party (the **"Releasing Party")** hereby releases the other (the **"Released Party")** from any liability which the Released Party would, but for this Section 17, have had to the Releasing Party during the term of this Lease, resulting from the occurrence of any accident or occurrence or casualty (i) which is or would be covered by a policy of property insurance on a special causes of loss form (i1Tespective of whether such coverage is being carried by the Releasing Party), or (ii) covered by any other property damage insurance being carried by the Releasing Party at the time of such occurrence, which accident, occurrence or casualty may have resulted in whole or in part from any act or neglect of the Released Party, its members, managers, officers, agents or employees; PROVIDED, HOWEVER, the release above set forth shall become inoperative and null and void if the Releasing Party wishes to place the appropriate insurance with an insurance company which (y) takes the position that the existence of such release vitiates or would adversely affect any policy so insuring the Releasing Party in a substantial manner and notice thereof is given to the Released Party, or (z) requires the payment of a higher premium by reason of the existence of such release. unless in the latter case the Released Party within IO days after notice thereof from the Releasing Party pays such increase in premium.

**Section 12. Liability Insurance.**

Tenant shall keep in force with an insurance company authorized to do business in the State, a policy of commercial general liability insurance with respect to the Premises, on which the limits of coverage for bodily injury (including death) and property damage shall not be less than $2,000,000.00 (combined single limits for bodily injury and property damage). In addition to Tenant, the policy shall also name Landlord, as well as any person, firm or corporation designated by Landlord and in privily with it and mortgagee for the holder of any mortgage on the premises, as an additional insured. Tenant shall upon demand deliver to Landlord a certificate evidencing the aforesaid coverage, which certificate shall provide that the insurance evidenced thereby shall not be canceled, materially modified or allowed to lapse without thirty (30) days' prior written notice thereof being given by the insurance carrier to the certificate holders.

**Section 13. Indemnification by Tenant.**

Tenant will protect, indemnify and save harmless Landlord from and against all liabilities, obligations, claims, damages, penalties, causes of action, reasonable costs and expenses (including, without limitation, attorneys' fees) arising or occurring during the term of this Lease or any period during which Tenant is occupying the Premises by reason of

(i) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Premises or any part thereof;

(ii) any use, non-use or condition of the Premises or any part thereof;

(iii) any failure on the part of Tenant to perform or comply with any of the terms of this Lease; or

(iv) the performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof.

**Section 14. Utility Charges.**

Tenant shall promptly pay all charges for heat, water, sewerage, electricity or any other utility used or consumed on the Premises and shall contract for the same in its own name.

Section 15. Use of Premises.

Tenant shall use the Premises for the operation therein of a Production Tree Nursery, and for any other lawful use or purpose.

**Section 16. Quiet Enjoyment.**

The Landlord covenants and agrees that so long as the Tenant performs its obligations under this Lease; the Tenant will have quiet enjoyment of the Demised Premises and all appurtenances thereto, and the Landlord will defend, and save harmless, the Tenant from any and all costs, expenses, losses and damages by any third party contesting the Tenant's right of possession under this Lease or interfering with Tenant's quiet enjoyment hereunder. Landlord may not, during the term of this Lease in any manner interfere with, or disturb, the quiet enjoyment and use by the Tenant, or any Demised Premises occupants under this Lease.

Section 17. Tenant's Right to Assign and Sublet.

Tenant shall not voluntarily, involuntarily or by operation of law assign or encumber this Lease, in whole or in part, nor sublet all or any part of the Premises, without the prior consent of Landlord in each instance, which consent shall not be unreasonably withheld by Landlord; provided, however, that Tenant may assign or sublet this lease (including its purchase option rights hereunder) to any of its Affiliates, defined as any corporation, partnership, joint venture, or other entity engaged in the tree and plant nursery and garden center business in which Tenant owns a substantial interest; or any person, party, corporation, partnership, joint venture or other entity that owns a substantial interest in Tenant. The consent by Landlord to any assignment, encumbrance or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment, encumbrance or subletting. Notwithstanding any assignment or subletting, Tenant shall remain fully liable under this Lease and shall not be relieved from perfom l ing any of its obligations hereunder. As a condition to any assignment of this Lease by

Tenant which is permitted under this Section, the assignee thereof shall be required to execute and deliver to Landlord an agreement, in recordable form, whereby such assignee assumes and agrees with Landlord to discharge all obligations of Tenant under this Lease. Any subsequent assignee will be required to execute subordination documents for any then existing mortgages.

**<u>Section 18</u>. <u>Full Rights of Landlord to Assign; New Mortgage or Other Non-Encumbrance by Landlord.</u>**

Landlord shall have full rights to sell, convey, or transfer all or any part of its interest in the Premises or assign its interest in this Lease; Landlord shall further have full rights to grant a new mortgage or other lien right interest in, or to otherwise encumber, the Premises, or any part thereof.

**<u>Section 19</u>. <u>Default Provisions.</u>**

There shall be an **<u>"Event of Default"</u>** by Tenant if either or both of the following events shall happen:

(A) If Tenant shall default in the due and punctual payment of any Rent and such default shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant under the notice provisions of Section 24, hereof; or

(B) If Tenant shall default in the performance of or compliance with any of the terms, conditions, covenants or obligations contained in this Lease to be observed and pe1formed by Tenant other than those referred to in the foregoing clause (I), and such default shall continue for a period of sixty (60) days after written notice thereof from Landlord to Tenant under the notice provisions of Section 24, hereof, if Tenant, within such period, shall not have commenced with due diligence and dispatch the curing of such default and thereafter shall fail or neglect to prosecute or complete with due diligence and dispatch the curing of such default.

Landlord agrees to make all payments due under the mo1tgage encumbering the Premises and otherwise comply with the mortgage in all ways. In the event Landlord is ever deemed to be in default under the mortgage, Landlord shall be deemed to be in default under this Lease.

**<u>Section 20.</u> <u>Title to Improvements</u>.**

The title to the Improvements, including without limitation, all buildings, alterations, additions, improvements, repairs, decorations, beating and air conditioning equipment and fixtures (other than Tenant's personal property) which shall have been made, furnished or installed by or at the expense of either Landlord or Tenant in or upon the Premises, shall automatically vest in Landlord upon the expiration, or sooner tem1ination oftl1is Lease, and the same shall remain upon and be surrendered with the Premises as a part thereof, without charge.

**<u>Section 21.</u> <u>Landlord's Covenant</u>.**

Landlord represents that it has full right and lawful authority to enter this Lease and perform Landlord's obligations hereunder, and upon payment by Tenant of the Rent, and upon the performance of all the covenants, terms and conditions on Tenant's part to be performed, Tenant shall peaceably and quietly hold and enjoy the Premises for the term without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord.

**Section 22. Legal Expenses; Remedies Cumulative.**

In case suit shall be brought because of the breach of any covenant herein contained on the part of Tenant or Landlord to be kept or performed, and a breach shall be established, the prevailing party shall be entitled to recover all expenses incurred therefor, including reasonable attorneys' fees.

Landlord's and Tenant's rights and remedies shall be cumulative and may be exercised and enforced concurrently. Any right or remedy conferred upon Landlord or Tenant under this Lease shall not be deemed to be exclusive of any other right or remedy it may have.

**Section 23. Waiver.**

The waiver by Landlord or Tenant of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition herein contained. No covenant, term or condition of this Lease shall be deemed to have been waived unless such waiver is in writing signed by the party charged therewith.

**Section 24. Notices and Payments.**

Whenever any notice is required or permitted under this Lease, such notice shall be in writing. All payments, notices, requests or other communications required or permitted hereunder shall be given in writing by hand delivery, overnight mail, certified mail, return receipt requested, postage prepaid, to the party to receive the same at its respective address set forth below, or at such other address as may from time to time be designated by such party to the others by notice in accordance with this Section:

If to Landlord: Tory Schwope
5609 N Blue Valley Road
Independence, MO 64058

If to Tenant: Schwope Brothers Tree Farms, LLC
5609 N Blue Valley Road
Independence, MO 64058

with a copy to: Micbael E. Griffin, Esq.
Martin, Pringle, Oliver, Wallace & Bauer, LLP
9401 Indian Creek Pkwy., Bldg. 40, Suite 1150
Overland Park, KS 66210

**Section 25. Broker's Commission.**

(A) Tenant represents and warrants to Landlord that it has not incurred or caused to be incurred any liability for real estate brokerage commissions or finder's fees in connection with the execution of this Lease for which Landlord may be liable.

(B) Each of the parties agrees to indemnify and hold the other harmless from and against any and all claims, liabilities or expense (including reasonable attorneys' fees) in connection with its breach of the foregoing representation.

**Section 26. Captions and Interpretation.**

The captions, section numbers, a1ticle numbers and index appearing in this Lease in no way define, limit, construe or describe the scope or intent of such sections or articles of this Lease. The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning, and not strictly for nor against either Landlord or Tenant, and should a court be called upon to interpret any provision hereof, no weight shall be given to, nor shall any construction or interpretation be influenced by, any presumption of preparation of lease by Landlord or by Tenant.

**Section 27. Partial Invalidity.**

If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease or the application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and enforced to the fullest extent permitted by law.

**Section 28. Automatic Renewal.**

The Term of this lease will automatically renew and extend for an additional term of twelve (12) months referred to as the "**Extension**" on the same terms, conditions and covenants set forth in this Lease, except as provided below. There may be up to ten (10) Extensions in this Lease. Only by written and signed mutual agreement of Landlord and Tenant and notice

delivered to the landlord no earlier than one-hundred eighty (180) days before, and no later than ninety (90) days before, the expiration of the Tenn or the preceding Extension of the Tenn, whichever is applicable can the lease be te1111inated. If Tenant fails to deliver Landlord said agreement and written notice of the termination of the lease within the prescribed time period, such termination will be void, and the automatic renewal will extend the Term.

There shall be a 5% increase in the Minimum Rent during each Extension te1111.

**Section 28. Applicable Law.**

The laws of the State of Missouri shall govern the validity, performance and enforcement of th.is Lease.

**Section 29. Successors.**

All rights and liabilities herein given to or imposed upon the respective parties hereto shall, except as may be otherwise herein provided, extend to and bind the respective heirs, executors, administrators, successors and the permitted assigns of Tenant.

The parties have executed this Lease effective as of the date first above written.

**LANDLORD:**

______________________________
**Tory L. Schwope**

Date: 12/29/22

**TENANT:**

______________________________
**Schwope Brothers Tree Farm, LLC**

Date: 12/29/22

# EXHIBIT A

## LEGAL DESCRIPTION

SEC-18 TWP-47 RNG-30 PT NW 1/4 OAF BEG AT PT ON W LI NW 1/4 729.97' N OF SW COR SD 1/4 TH CONT N ALG SD W LI 331.80' THE 1641.03' TH S 663.62' TH W 984.63' TH N 02 DEG 08 MIN 31 SEC E 331.81' TH N 89 DEG 51 MIN 14 SEC W 656.40' TO POB

**EXHIBIT B**

SITE PLAN

